[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a limited contested dissolution of marriage. The wife's maiden name was Gilda Suppa and Edward Lane were married on October 19, 1957 in Stamford, Connecticut. The husband has resided in the State of Connecticut at least a year prior to the date of dissolution. The marriage of the parties has broken down irretrievably. The plaintiff and defendant have no minor children issue of their marriage. The parties do have two daughters both of them are over the age of eighteen. Neither the State of Connecticut nor any subdivision thereof have provided the parties or the children any support during the course of the marriage. The husband was born on June 16, 1937 and the wife was born on November 23, 1937. When the parties were married the husband was age 20 and the wife was age 19.
The husband was working at Pitney Bowes at the time of the marriage and still works there. He started as a material handler in high school in 1955 and he has been employed continuously at that company to the present. The husband is presently the manager of corporate purchasing. The director of purchasing is the only person above him. On a typical day he has 12 people reporting to him. He is basically involved in purchasing everything for the company, except that which goes into the products. He is involved in supplies and construction, capital equipment and the like.
The testimony indicated that as a result of that position, there were many fringe benefits available to him other than that which was paid to him by the company. He discussed golf weekends and the like that were paid by the persons who did business with the company. In fact, in addition to his regular salary he had other income from his consulting business substantially as shown on the earning history of her husband's tax returns shown on the defendant's amended claim for relief dated March 24, 1993. The court entering these orders has taken into consideration his earning capacity in that area. In 1992 he earned approximately $4,900 in additional business income.
Suffice it to say that the record is clear that the husband was the principal source of the income during the course of the marriage. It is because of his work and benefits that the assets that appear for distribution as shown on the parties' financial affidavits were created. In addition, the husband inherited when his uncle died in 1985 or 1986. He inherited the U.S. savings bonds which as of March 18, 1993. had a value of $247,094.31. In addition, he inherited a one-half interest as a remainderman in property occupied by a life tenant at 18 Tremont Street, Cos Cob, Connecticut, which has a one-half value presently of $97,000. In addition the husband has a retirement plan at Pitney Bowes.
Throughout most of the marriage the wife did not work. She is a high school graduate. It is clear by the Stipulation of Expected CT Page 3539 Testimony of Dr. Mushlin on file dated March 18, that the wife is not capable of earning a living and totally supporting herself. She suffers from immune complex arthritis which causes persistent joint swelling with intermittent high fevers and boils. To control this condition she is treated with potent chemotherapy which is used to control her disease. The disease is a side effect from colon surgery which took place in the early 1970's. The disease and discomfort is controllable as long as she is maintained on the prescribed drugs.
The wife in the mid 1970's had an intestinal bypass operation. She had excessive weight. She had the surgery in order to lose weight. Most of her intestines were tied off. She was 100 pounds overweight at the time. Apparently a side effect of that operation was the immune complex arthritis set forth above. The court finds that she is not capable of earning a living and totally supporting herself.
The husband's health is good. He was a high school athlete and plays golf on a regular basis and appears fit and trim.
The court finds that the causes of breakdown were the husband's marital infidelities during the course of the marriage. His infidelities started as early as 1966 when he admitted to an affair while his wife was pregnant. The wife tried to kill herself after that affair and sought a psychiatrist and was in therapy approximately for a year and half thereafter.
She thereafter had the operation on her intestines as previously discussed. Her health has not been good. In 1981 she had swelling of her joints, pain in her knees, she walked with difficulty, had fevers, had joint problems in her fingers, shoulders and knees, and she took all kinds of anti-inflammatory drugs.
In 1984 she found out about another relationship with the husband and another woman. The husband in his testimony admitted that at one time during the marriage he left in part because of the other woman. Although the wife regularly took back her husband after these affairs, they eventually led to the termination of the marriage.
In 1992, the wife had approximately $35,000 in hospital bills not counting a third hospital procedure. In 1992 she had dental bills of approximately $1,600 and doctor bills in excess of $14,000 CT Page 3540 and drug bills in excess of $1,000. The wife's typical day is getting up, making the bed, cleaning up, visiting doctors for physical therapy and the like. The wife wants to stay in the house as it has adequate handicap access and handicap facilities. She is contemplating her condition getting worse.
The parties have stipulated that the value of the Gary Road property is $277,500. The parties have stipulated that the value of the Greenwich property inherited by the husband is $194,000. His one half interest is $97,000. The court finds that the husband's gross income is $65,800 as the result of his employment at Pitney Bowes.
The court has listened to the witnesses and reviewed all the exhibits in the case. In addition, the court has taken into consideration all of the criteria set forth in 46b-81 the assignment of property and transfer title statute, 46b-82 the alimony statute, and 46b-62 the attorneys fees statute. The court has considered all of the evidence and reviewed the exhibits and reviewed the parties' claims for relief as well as their financial affidavits in rendering its decision. Accordingly the court orders as follows:
1) The marriage is dissolved on the grounds of irretrievable breakdown.
2) The wife shall be the sole and exclusive owner of the Ford PROBE automobile.
3) The husband shall be the sole and exclusive owner of the Volvo.
4) The husband shall quit claim to his wife of the premises located at 126 Gary Road, Stamford, Connecticut. The wife shall receive the premises and the furnishings and household goods located therein. If the husband shall fail to convey his interest within thirty days of this decree the premises shall be transferred by operation of law pursuant to 46b-81. The wife shall hold the husband harmless from the mortgage on the premises and shall hold the husband harmless from all claims under the mortgage, including monthly payments.
5) The husband shall keep his checking account as shown on his financial affidavit in the sum of $1,097.81. CT Page 3541
6) The wife shall keep her two Gateway Bank accounts as shown on her financial affidavit. One in the sum of $35,000 and the other is the sum of approximately $500.
7) The parties shall divide equally the amount in the credit union, which at the time of trial was $87,468. The parties shall divide equally the amount in that account as of the date of this decree.
8) The parties shall share equally the Pitney Bowes stock. At the time of the dissolution there were two thousand eight hundred and ninety-six shares. Each party shall have as their sole and exclusive property one thousand four hundred and forty-eight shares.
9) The husband shall pay to the wife as lump sum alimony out of the Prudential account the sum of $150,000 (one hundred and fifty thousand dollars) within thirty days of the day of this decree.
The court in making this lump sum order to the wife has taken into consideration the fact that she has previously received $10,000 pursuant to the stipulation of the parties that that amount was paid to her. Accordingly the court reduced the payment by $10,000 out of the Prudential account.
10) The husband shall retain as his sole and exclusive property his IRA as shown on his financial affidavit in the approximately sum of $20,747.
11) The husband shall retain as his sole and exclusive property the Transamerica account as shown on his financial affidavit in the sum of $3,763.
12) The husband shall retain as his sole and exclusive property the USA savings bonds shown on his financial affidavit in the approximate sum of $247,094.
13) The husband shall retain as his sole and exclusive property his one-half interest in the 18 Tremont street, Cos Cob, property shown in the approximate value of $97,000.
14) The husband shall keep as his sole and exclusive property the Pitney Bowes deferred investment plan in the approximate sum of $12,553 as shown on his financial affidavit. CT Page 3542
15) The parties shall share equally the REIT limited partnership shown on the husband's financial affidavit as a joint account. The parties shall retain joint ownership of that property.
16) The parties shall share equally the husband's Pitney Bowes Retirement plan shown on Exhibit I as of the date of this decree. The court shall retain jurisdiction over said pension plan in order to effectuate a quadro with the plan administrator assigning to the wife, one half of the value of the pension as of the date of this decree. At the time of the trial the pension was shown to have a value of $2,109.18 per month at age sixty-five.
17) All other assets of the parties in their possession and not expressly addressed herein shall be their sole and exclusive property.
18) Based on the division of property of as aforesaid, the parties shall pay their own legal fees in connection with this proceeding.
19) The husband shall hold the wife harmless on account of any and all tax returns filed by the parties.
20) The parties shall pay any and all liabilities on their respective financial affidavits and shall indemnify and hold the other harmless on said liabilities, except that the wife shall be responsible for the mortgage on the 126 Gary Road, Stamford, Connecticut property.
21) The husband shall carry for the benefit of the wife his Pitney Bowes insurance in the present approximate sum of $120,000. Said insurance shall be carried for the benefit of the wife, said sum to be payable to her on his death as long as she is alive, she has not remarried, or her alimony has not sooner terminated.
22) The husband shall provide the wife medical insurance under the COBRA benefit plan available through his company. He shall pay the cost of those premiums for three years from the date of the dissolution. All unreimbursed expenses not covered by insurance shall be the sole and exclusive responsibility of the wife. The husband testified that the cost of the medical coverage for the wife will be approximately $166 and the dental will be approximately 18.33. Accordingly there is approximately $185 per CT Page 3543 month to be paid by the husband presently.
23) The husband shall pay the wife alimony in the sum of $2,100 per month while the husband is employed. On the husband's retirement there will be a second look as to the alimony and whatever pension benefits they are both receiving shall be factored into his alimony responsibility at that time, if any. That alimony shall be payable to the wife as long as the husband is alive, the wife is unmarried, the wife has not cohabitated under the statute and the wife is alive.
24) All other claims of relief not expressly addressed herein have been rejected.
KARAZIN, J.